GILMAN, Receiver, Appellant, vs. DRUSE, Respondent.

*September 6 — October 15, 1901.*

*Statutes: Repeal by implication: Mutual hail insurance: De facto corporation: Estoppel: Ultra vires: Assessments: Unauthorized purposes.*

1. Secs. 1956–1966, R. S. 1878, authorized the formation of corporations to transact the business of mutual insurance against loss or damage by hail to all kinds of "grain, fruits, hops, and legumen." Ch. 329, Laws of 1895, authorized the formation of mutual companies to insure against loss and damage to farm buildings, stock, and crops by hail, tornadoes, cyclones, or hurricanes, with greater powers than those granted by secs. 1956–1966, but the act contained no clause expressly repealing said sections, and both acts were substantially incorporated into the revision of 1898. *Held,* that the act of 1895 was not a revision of the whole subject matter of insurance against hail, and did not by necessary implication repeal secs. 1956–1966.

2. Articles of incorporation of a mutual hail insurance company organized under secs. 1956–1966, R. S. 1878, were signed in the body of the instrument instead of at the end, and no certificate of acknowledgment was attached as required by law, but the preamble recited that the signers thereby acknowledged and adopted said articles. The incorporators, business men not learned in the law, employed an attorney, who drew up the articles and subsequently advised them in making their by-laws, etc. The incorporators immediately organized and commenced the transaction of a large business in the corporate name. *Held,* a *bona fide* attempt to comply with the law, and that there was at least a *de facto* corporation.

3. One who deals with a *de facto* corporation as a corporation is estopped to question the validity of its organization, at least so far as transactions within its supposed corporate powers are concerned.

4. The provisions of secs. 1957, 1962, Stats. 1898, that all persons insured in a mutual hail insurance company shall be members of the corporation "during the current year in which they have insured, and until and including the second Monday of March thereafter," and that if the premiums "in any one year shall be insufficient to pay losses, such a corporation may levy an assessment upon each member thereof, in proportion to the amount insured, to cover such deficiency," contemplate one assessment for each year upon all persons insured during that year; and such assessment is therefore not to

Gilman vs. Druse.

be confined to policy holders who were such at the time the losses
which it represents occurred.

5. *It would seem* that a statute authorizing the formation of corpora-
tions to insure "all kinds of grain, fruits, hops, and legumen"
does not authorize the insurance of crops of tobacco.

6. Where the articles of incorporation and the by-laws of a mutual
company organized under such a statute were printed on each pol-
icy and stated that one of the purposes of the corporation was to
insure tobacco, the policy holders took their policies charged with
knowledge that the company proposed to insure tobacco, and can-
not question its acts in that regard.

7. Assessments upon the members of mutual insurance companies
must be limited to the objects declared by law, and to the reason-
ably necessary expenses of collection, with a reasonable allowance
for probable failure to collect a part thereof.

8. Sec. 1962, S. & B. Ann. Stats. (providing that if the amount of pre-
miums received in any one year by a mutual hail insurance com-
pany be insufficient to pay the losses, such corporation may levy
an assessment to cover such deficiency), when construed in the
light of other provisions contemplating the exaction of cash pre-
miums, substantial in amount, out of which the general expenses
of conducting the business shall be paid, authorizes an assessment
for one purpose only, i. e. the payment of losses; and the inclusion
of a considerable amount for the express purpose of paying ordi-
nary expenses renders the assessment invalid.

APPEAL from a judgment of the circuit court for Sauk
county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

This is an action brought by the plaintiff, as receiver of a
mutual hail insurance company, to collect an assessment
alleged to be due from the defendant to the company, which
was levied by the company prior to the appointment of the
plaintiff as receiver.

It appeared by the evidence that the United Farmers'
Township Mutual Hail Insurance Company was attempted
to be organized as a mutual hail insurance corporation in
the year 1898, under secs. 1956–1966, R. S. 1878, as amended.
The supposed articles of incorporation began as follows:

"Know all men by these presents, that we, W. G. Wil-
liams, W. McBride, C. F. Paige, J. F. Paige, and Samuel S.

Spedden, desiring to form a corporation for the purpose of transacting the business of mutual insurance against loss or damage by hail, and to all kinds of grain, fruits, hops, and legumen, pursuant to section 1956 of the Revised Statutes of the State of Wisconsin for the year 1878, together with all the additions and amendments thereto, do hereby for such purpose associate ourselves together as a body corporate, and do hereby acknowledge and adopt the following declarations and articles."

After this preface follows article 1, which states the name and location of the company; article 2, which states the general nature of the business to be conducted, and article 3, which reads as follows: " The names and places of residence of the persons associating hereby for the purpose of forming this corporation are as follows." Then follow the names of the five organizers of the company, the same being the signatures of the said parties, signed at this place in the articles instead of at the end. After these signatures follow eight further articles. Attached to these articles there was a certificate of the alleged incorporators that the same was a true ·copy of the original articles, added to which was an affidavit by said incorporators to the truth of the certificate.

These supposed articles of incorporation were duly filed with the commissioner of insurance May 9, 1898, and the company thereafter organized and elected officers, and proceeded to the transaction of business in a number of counties in this state. It issued a large number of policies insuring crops against damage by hail, amounting in the aggregate to $1,088,879. During the season of 1898 there were a large number of hail losses, and claims were filed with the company for about $134,000, which the evidence tended to show were adjusted at the sum of $23,206.16. At a meeting of the directors of the company held September 15, 1898, an assessment of five per cent. was assessed against all of the policy holders for the payment of the losses so adjusted, as well as certain unpaid expenses of the company in transact-

Gilman vs. Druse.

ing business, which, it is claimed, amounted to $14,316.01. Subsequently, upon examination of the books and accounts of the company, and upon recommendation of the commissioner of insurance, on the 10th of October, 1898, this assessment was reduced from five per cent. to four per cent., which, if paid in full, would produce the sum of $43,500. It appears that the salaries of the officers of the company had not been fixed prior to the first assessment, and that on the 24th of September, 1898, the salaries of the officers were fixed as follows: President, $2,500; secretary, $1,500; general agent, not exceeding $600; assistant treasurer, $600; and attorney, $200.

The testimony further shows that June 9, 1898, the defendant made application for insurance of certain crops, and paid the membership fee, and received a policy insuring his crops in the sum of $1,000, and retained such policy until November, 1898, after the crops were harvested; that he sustained no loss; and that he received timely notice of the assessment and of its reduction. It was admitted that he never paid the assessment. The company being insolvent, the plaintiff was, upon due proceedings had, appointed receiver on the 23d day of May, 1899, and was authorized to collect, sue for, and recover as such receiver all debts and demands, including all assessments that might be due the company. The plaintiff duly qualified as receiver, and is still acting. No money was turned over to the receiver from the company, and he had no way of adjusting claims except to collect the assessments levied by the company. and remaining unpaid.

A nonsuit was granted by the court at the close of the plaintiff's case, and from judgment of dismissal the plaintiff appeals.

For the appellant there was a brief by *Erdall & Swansen* and *Clancey & Loverud,* and oral argument by *J. L. Erdall.* They argued, among other things, that ch. 329, Laws of

1895, is an independent act passed for the purpose of authorizing the formation of mutual insurance companies to transact a general hail, tornado, cyclone, and hurricane business. It did not therefore repeal the former act by implication. *Vorous v. Phenix Ins. Co.* 102 Wis. 76; *Golonbieski v. State,* 101 Wis. 333; *Bentley v. Adams,* 92 Wis. 386; *Gilkey v. Cook,* 60 Wis. 133; *Bernhardt v. Rice,* 98 Wis. 578; *State ex rel. Ennis v. Janesville,* 90 Wis. 157, 159; 23 Am. & Eng. Ency. of Law (1st ed.), 486; *Wood v. U. S.* 16 Pet. 363; *Chicago, M. & St. P R. Co. v. U. S.* 127 U. S. 406; *Frost v. Wenie,* 157 U. S. 46, 58; *U. S. v. Healey,* 160 U. S. 146; *U. S. v. Greathouse,* 166 U. S. 605; *Att'y Gen. ex rel. Taylor v. Brown,* 1 Wis. 514; *Att'y Gen. v. R. R. Cos.* 35 Wis. 425; *Dane Co. v. Reindahl,* 104 Wis. 302, 305.

For the respondent there was a brief by *James A. Stone* and *Grotophorst, Evans & Thomas,* and oral argument by *Mr. Stone.* They contended, *inter alia,* that the law of 1895 by implication repealed the former law, because it revised the whole subject matter. 23 Am. & Eng. Ency. of Law, 487; *State v. Campbell,* 44 Wis. 529; *Dane Co. v. Reindahl,* 104 Wis. 302; *State ex rel. Ennis v. Janesville,* 90 Wis. 157; *Burlander v. M. & St. P. R. Co.* 26 Wis. 76; *Schneider v. Staples,* 66 Wis. 167; *Moore v. S. & St. C. R. Co.* 34 Wis. 173; *Oleson v. G. B. & L. P. R. Co.* 36 Wis. 385; *Curry v. C. & N. W. R. Co.* 43 Wis. 665. The fact that the law of 1895 includes the terms tornadoes, cyclones, or hurricanes is immaterial. An insurance company could be formed under ch. 329, for the purpose of mutual insurance against loss or damage by hail alone. If that is so, and secs. 1956 *et seq.* were in force, hail insurance companies organized for the same purpose could be organized under two entirely inconsistent methods. The legislature having used the disjunctive *or,* the court must construe the statute with reference thereto. *Williams v. Citizens' F. Co.* 25 Ind. App. 351. In mutual companies it is impossible to make a valid

assessment that does not take into consideration the number of policy holders at the time each loss occurs. *Davis v. Parcher & J. & A. S. Co.* 82 Wis. 499; May, Insurance, § 559; Beach, Insurance, § 114; 32 L. R. A. 488, note; *Bowen v. Kuehn,* 79 Wis. 53; *Great W. T. Co. v. Burnham,* 79 Wis. 47; *Detroit M. M. F. Ins. Co. v. Merrill,* 101 Mich. 393.

WINSLOW, J.   It does not appear in the record upon what ground or grounds the nonsuit in this case was based, but respondent's counsel argue that the ruling was correct, (1) because the mutual hail insurance company of which the plaintiff is receiver never was a legal corporation; and (2) because, even conceding that it was a legal corporation, the assessment upon which this action was founded is void.

1. The mutual hail insurance company in question was attempted to be organized as a corporation under the provisions of ch. 196, Laws of 1876, which now appears, with some changes, as secs. 1956–1966, Stats. 1898.   This act, as condensed and codified by secs. 1956–1966, R. S. 1878, provided that any number of residents of this state, not less than five, might file in the office of the secretary of state (afterwards changed to the commissioner of insurance by ch. 194, Laws of 1879) a declaration, "signed and acknowledged" by them, expressing their desire to form a corporation to transact the business of mutual insurance against loss or damage by hail to all kinds of "grain, fruits, hops, and legumen," and setting forth the name of the corporation, the location of its principal office, and the names of its first board of directors; and that every such corporation should possess the usual powers of a corporation for the purposes specified.   The act also contained provisions for the election of officers, their duties, and the bonds to be given by them; granted to such corporation the power to make contracts of insurance against loss by hail, to levy assessments upon

members in case of necessity, to accumulate a reserve fund, to divide profits in excess of the reserve fund among the members; and required the making of annual reports to the insurance commissioner.

.In the year 1895 another law was passed, authorizing the formation of mutual insurance companies against loss by hail, tornadoes, cyclones, or hurricanes. Ch. 329, Laws of 1895. By this law any number of residents of Wisconsin, not less than 100, collectively owning real estate therein of not less than $250,000 in value, were authorized to incorporate for the purpose of mutual insurance against loss or damage by hail, tornadoes, cyclones, or hurricanes. This act contained full provisions as to the manner of formation and the conduct of the business of such corporations, and conferred upon them power to issue policies insuring property against loss and damage by hail, tornadoes, cyclones, or hurricanes, but provided that they should insure no property other than detached dwellings, farm buildings and their contents, and live stock while on the premises or running at large, and hay, grain, and all other products while growing or while in the shock, stack, bin, crib, granary, or other buildings upon such premises. This act is now substantially contained in secs. 1966—2 to 1966—12, Stats. 1898. It contained no clause expressly repealing the mutual hail insurance company law, nor was there any section in the revision of 1898 expressly repealing such law, but, on the contrary, such law was reincorporated into the general law of the state by that revision. The respondent's contention is, however, that the law of 1895 repealed the former law by necessary implication, because it is a revision of the whole subject matter thereof. We find ourselves unable to agree with this view of the matter. It is well settled that a repeal by implication is not favored in the law, and that, when two acts on the same subject may well subsist together, there will be no such repeal. *Dane Co. v. Reindahl,* 104 Wis. 302.

It is really a question of intention of the legislature. There does not seem to us to be any good ground for saying that the act of 1895 shows any intention of superseding the former act, or that it is, in substance or effect, a revision of such former act. The act of 1895 seems to have been passed for the purpose of providing for the organization of companies with greater powers than the companies organized under the previous act. It was evidently desired that there should be opportunity for cheap and mutual protection of nearly all farm property against the loss by tornadoes or hail; while the former law only provided for mutual protection of growing crops against loss or damage by hail. There is no reason apparent why the two laws may not well co-exist, leaving it optional with persons intending to form such a corporation whether they will form one with simply the narrow and limited power of insuring growing crops against hail, or one with the greater power of insuring all kinds of farm property against windstorms or hail, or both. The absence of any express repealing clause, either in the act of 1895 or in the revision of 1898, as well as the fact that the prior law is inserted in full in the revision in immediate connection with the law of 1895, are both very strong indications that there has been no intention on the part of the legislature to repeal such prior law. We conclude, therefore, that the law under which the mutual hail insurance company under consideration here was attempted to be incorporated was a valid existing law in May, 1898, when the articles of incorporation were attempted to be filed.

The principle is familiar that, where there is a valid law under which a supposed corporation might lawfully have been incorporated, and an attempt in good faith to comply with the law, and the corporation attempted to be organized actually engages in the transaction of its appropriate business, it becomes a *de facto* corporation, though, by a failure

Gilman vs. Druse.

to comply with some statutory requirement, it may not be a corporation *de jure*. *Gilkey v. How*, 105 Wis. 41. We have been unable to see how it can be said that there was not an attempt in good faith to comply with the law in organizing the supposed insurance company before us. It is true that the articles of incorporation were not signed at the end by the corporators, and that no certificate of acknowledgment was attached; but it does appear, however, that they placed their autograph signatures in the body of the instrument, and that the instrument in its preamble recites that they hereby "acknowledge and adopt" said articles. Moreover, it is shown that the corporators were all business men, not learned in law; that they employed an attorney to draw, and who did in fact draw, the articles, and subsequently advised them in making their by-laws and transacting their business; and that they immediately organized and commenced the transaction of a large business in the corporate name. Every fact points to an honest belief on their part that they had formed a valid corporation, and we therefore conclude that the corporation was at least a *de facto* corporation. Being such, and the defendant having dealt with it on that basis, he is estopped from saying that there was no legal corporation, at least so far as transactions within its supposed corporate powers are concerned. *Slocum v. Head*, 105 Wis. 431. So the argument that there can be no recovery here because the supposed corporation was not legally incorporated falls to the ground.

2. As to the validity of the assessment, the first claim of the respondent is that it was invalid because it was a horizontal assessment levied upon all policy holders, and not confined to policy holders who were such at the time the losses which it represents occurred. *Davis v. Parcher & J. & A. Stewart Co.* 82 Wis. 488. This argument would be strong and perhaps controlling, were it not for the provision of the statute (sec. 1962, Stats. 1898) which declares

that, if the amount of premiums received for insurance "by any such corporation in any one year shall be insufficient to pay the losses, such corporation may levy an assessment *upon each member thereof*, in proportion to the amount insured, to cover such deficiency." Sec. 1957 provides also that all persons insured shall be members of the corporation "during the current year in which they have insured, and until and including the second Monday of March thereafter." The statute seems to contemplate and require one assessment for the year upon all persons insured during that year, and this was what was done in the present instance.

It is next contended that the company was not authorized to insure crops of tobacco, and that, because it appears that the company did insure tobacco, and a large proportion of the losses were for damage to tobacco, the assessment is void.

The law, as it stood when this company was organized, probably did not authorize the insurance of crops of tobacco. It authorized simply the insurance of "all kinds of grain, fruits, hops, and legumen." In the revision of 1898 the word "grain" was changed to "crops," but, as this statute did not go into effect until September 1, 1898, the change has no bearing upon the questions involved in this case.

However, if, as seems probable, the acts of the corporation in insuring crops of tobacco were *ultra vires*, it avails the defendant nothing in this action. The company was a mutual company, and the defendant, by insuring therein, became one of its members. Both the articles of incorporation and the by-laws (which were printed on each policy) stated that one of the purposes of the corporation was to insure tobacco. The defendant was one of the insurers, as well as the insured, and he took his policy charged with knowledge of the fact that the company proposed to insure tobacco. In legal effect he himself participated in the transaction of such business, and it is difficult to see how he

can now be heard to question such acts. The company could not urge the defense of *ultra vires* to any of the claims for losses upon such crops of tobacco. This doctrine is now well settled in this court. *Bigelow v. C., B. & N. R. Co.* 104 Wis. 109. Such losses were, therefore, legal liabilities of the company, which the defendant joined in incurring, and which he cannot question.

The final contention made by the respondent is that the assessment is excessive, and not based upon the actual amount of losses which the company was obliged to meet. This is the most serious question raised upon this appeal. The evidence submitted by the plaintiff tends to show that the losses sustained by the company had been adjusted, at the time the assessment was made, at the sum of $23,206.16. There is also evidence of a very weak and unsatisfactory nature that there was then an outstanding indebtedness for expenses of the business amounting to more than $14,000. This sum included, apparently, an allowance of more than $5,000 for salaries of officers, which were not in fact fixed until nine days after the assessment was made. Thus there is claimed to have been a total indebtedness of nearly $38,000. The assessment (as finally reduced) would net, if fully collected, $43,550, and it is argued by appellant that the excess of the assessment over the liabilities is no more than reasonably sufficient to provide against shrinkage and expenses of collection. *Davis v. Shearer*, 90 Wis. 250. While it is entirely true that such allowance for shrinkage may lawfully be made and if it is reasonable in amount the assessment will be valid, it is equally true that, if an assessment which is unreasonably large and out of proportion to the amount of liabilities to be paid be heedlessly levied, such assessment will amount to a fraud upon the policy holders; and it is also true that if an assessment be levied, any substantial part of which is for purposes for which an assessment is not authorized, the entire assessment will be

invalidated. *Rosenberger, L. & Co. v. Washington M. F. Ins. Co.* 87 Pa. St. 207.   Assessments must be limited to the objects declared by the law, and to the reasonably necessary expenses of collection, with a reasonable allowance for probable failure to collect a part thereof.   *Id.*

Turning now to the law under which this company was incorporated, we find that by sec. 1962, S. & B. Ann. Stats., assessments are authorized for one purpose, and only one, namely, the payment of losses.   The section cited says that, if the amount of premiums received in any one year be insufficient to pay *the losses,* such corporation may levy an assessment to cover such deficiency.   The word *losses* can mean but one thing in this connection, and that is losses occurring by reason of its insurance risks.   While this section does not say, in so many words, that the expenses of the business shall be paid out of the cash premiums received, we think there can be no doubt that such is the intent and proper construction of the law.   The very general, and in fact universal, practice on the part of insurance companies of paying agents and operating expenses out of the cash premiums received is to be considered in construing the law.   It may well be that it did not seem necessary to the legislature, in view of such custom, to make any special statement that expenses were to be paid out of the cash receipts; but there are clear indications of the legislative intent in other parts of the law.   That such companies were expected to charge and collect cash premiums is certain, and we think it is apparent also that it was contemplated that such premiums should be substantial in amount, and should be the fund from which the general expenses of conducting the business were to be paid.   This latter intent appears from the provisions of sec. 1963, which declares that "the *net* profits of any such corporation shall constitute a reserve fund, of which not more than one half shall ever be drawn for the payment of losses," etc.   Profits are

Gilman vs. Druse.

not the result of assessments, but must be the result of the regular and ordinary business of the corporation,— i. e. the proceeds of cash premiums collected; and *net* profits can mean nothing more nor less than the excess of such premiums over the expenses of the business and the amount of losses. So the legislative intention that the expenses of the business shall be paid out of the cash premiums received is manifest.

But, on the other hand, the power to make an assessment is to be strictly construed. An assessment can only be made for the purposes which the law authorizes. The law before us only authorizes the levy of an assessment to pay such part of the losses as the premiums received in any year prove insufficient to pay. There is no authority given in the statute to levy assessments to pay general expenses of the conduct of the business. It may well be that the necessary expenses of adjusting the losses should be considered as a part of the losses which may be paid from the assessment, as well as the expenses of making and collecting the assessment itself, but further than this there is no warrant for going. A precisely similar situation was presented in the case of *Sinnissippi Ins. Co. v. Taft*, 26 Ind. 240, where the court held that the statute only authorized the making of an assessment to pay losses, and that, an assessment having been made to meet a large amount of expenses as well as losses, it was unauthorized and created no liability. Some of the remarks of the court in that case are so pertinent here that they may be quoted with profit:

"It is quite apparent that the purpose of the legislature was to protect policy holders from assessments for the mere purpose of paying the salaries of officers, fixed by themselves, and thus compel the exaction of a sufficient cash premium to meet current expenses, at least. This makes the premium note sacred to the purpose of indemnity of members against losses by fire; tends to a prompt and cheerful payment of assessments, because of the certainty that the

money will go exclusively to the payment of losses and cannot lawfully be used for any other purpose; and lawfully protects the public from the depredations of institutions conducted with a view merely to the aggrandizement of their managers."

It appears in the present case by the very words of the resolution levying the assessment, as well as by the direct testimony of one of the officers who made it, that it was expressly made to cover the $14,000 of unpaid general expenses of the business as well as to pay the $23,000 of losses. We cannot doubt that this was unauthorized, and constituted such a gross mistake as to amount to a fraud, and hence invalidated the assessment.

This leaves the situation open for the receiver to take such steps as may be necessary in order to make a proper assessment to pay the losses of the company.

*By the Court.*— Judgment affirmed.