Argued January 9, decided January 23, 1912.

## BROWN v. WEBB.

[120 Pac. 387.]

EVIDENCE—PAROL EVIDENCE—ACTS OF DE FACTO CORPORATION.

1. Parol evidence is admissible that, after an attempt to organize an association by the execution of articles of incorporation, the association held meetings and did business in a corporate capacity, in order to establish the existence of a *de facto* corporation, without producing the corporate records or accounting for their loss, if such parol evidence does not purport to give the contents of the corporate records or documents.

CORPORATIONS—DE FACTO CORPORATIONS—COLLATERAL ATTACK.

2. The existence of a corporation cannot be collaterally attacked, though its organization be so defective that the State might oust it from the exercise of corporate powers by a direct proceeding.

CORPORATIONS—DE FACTO CORPORATIONS.

3. When persons have in good faith attempted to organize a corporation under a valid law for a lawful purpose, and have colorably complied with the requirements of the law and assumed to exercise corporate powers thereunder, there is a *de facto* corporation.

CORPORATIONS — DE FACTO CORPORATIONS — NONCOMPLIANCE WITH STATUTES.

4. Failure to comply with mandatory statutory requirements in the organization of a corporation does not necessarily prevent the formation of a *de facto* corporation.

CORPORATIONS—DE FACTO CORPORATIONS—POWERS OF OFFICERS HOLDING REALTY.

5. Trustees of a *de facto* corporation are capable of taking and holding title to realty.

CORPORATIONS—DE FACTO CORPORATIONS—EVIDENCE.

6. Evidence in ejectment by a benevolent society *held* to show *prima facie* that plaintiff was a *de facto* corporation.

CHARITIES—UNINCORPORATED ASSOCIATIONS—CAPACITY.

7. An association organized for benevolent purposes may become the beneficiary of a specific trust when organized so as to entitle it to become incorporated, though not in fact incorporated; and hence the trustees of such societies may hold realty, and sue to protect it.

PLEADING—SURPLUSAGE—INCORPORATION OF COMPLAINANT.

8. Since the trustees of an organized, but unincorporated, benevolent society could hold title to realty and sue to protect it, allegations of incorporation in a complaint in ejectment by such a society could be disregarded as surplusage, and plaintiff allowed to recover as an unincorporated benevolent society.

From Marion: GEORGE H. BURNETT, Judge.

Statement by MR. JUSTICE BEAN.

This is an action of ejectment by Edna J. Brown, Perry Burch, and C. A. Hicks-Burch, as trustees of Silver Lodge, No. 36, Independent Order of Good Templars, against George A. Webb and Elizabeth Webb. The cause was tried before a jury, and from a judgment of involuntary nonsuit plaintiffs appeal.

It is alleged on the part of plaintiffs that during all the times mentioned in the complaint Silver Lodge, No. 36, Independent Order of Good Templars, was and is a benevolent society, organized and existing under and by virtue of the laws of the State of Oregon, and that Edna J. Brown, Perry Burch, and C. A. Hicks-Burch are the duly elected, qualified, and acting trustees of said lodge.

The defendants deny the substance of the allegations made by plaintiffs. They plead the statute of limitations, and further aver that defendant, George A. Webb, is the owner in fee simple of the real property.

Issue is joined by the reply. The real estate involved is a fractional lot in the city of Silverton North, Marion County, Oregon, upon which is situate a building, the upper story thereof having been used by the said order of Good Templars as a lodge room. It appears that on

January 24, 1871, at a regular meeting, John C. Daven-
port, Fones Wilbur, and S. T. Wilbur were elected trustees
of the lodge, and instructed to incorporate it. On October
7th of that year articles of incorporation in triplicate were
prepared and signed by said trustees, but not acknowl-
edged. On the 10th of the same month one of the articles
was filed with the Secretary of State, and another with
the county clerk of Marion County, as required by statute.
Certified copies of the articles filed, together with one of
the originals retained by the lodge, were offered in
evidence and objected to by defendants' counsel for the
reason that the same had not been acknowledged. Testi-
mony was introduced by plaintiffs tending to show that
the lodge had held meetings from time to time up to the
date of the commencement of the action, and records of
these meetings were produced, dating as far back as
March 20, 1899. It was claimed by plaintiffs that the
older records of the lodge could not be found. The testi-
mony offered tended to show that, before defendants took
possession of the building, it had been the custom for a
long time to keep the old record books in the lodge room;
that demand had been made and notice served upon
defendants to produce the same; that search and inquiry
had been made wherever it was thought they might be,
but without result; and, furthermore, that the minutes of
some of the meetings had been written upon loose sheets
of paper, and not copied into the regular lodge records.
Plaintiffs offered to prove by parol evidence that other
meetings of the lodge were held during the time between
the date of the articles of incorporation and the date of
the minutes produced for the purpose of showing that
the lodge was a corporation *de facto*. They also offered
certified copies of conveyances to show a chain of title to
the property from the government of the United States to
the said trustees. To all of this objection was made by
counsel for defendants as incompetent, for the reasons

that the lodge records were the best evidence, and that no sufficient excuse had been shown for their nonproduction, and that the lodge was not legally incorporated.  The trial court sustained these objections, rejected the offer of proof, and granted defendants' motion for a nonsuit. Plaintiffs duly saved exception to these rulings, and assign the same as errors.                              REVERSED.

For appellants there was a brief with oral arguments by *Mr. Robert H. Down* and *Mr. Oscar A. Neal.*

For respondents there was a brief over the names of *Messrs. Rauch & Seitz* and *Messrs. Carson & Brown,* with oral arguments by *Mr. Louis E. Rauch* and *Mr. John A. Carson.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. These questions are so blended that they may be considered together.  For the purpose of establishing the existence of a corporation *de facto,* parol evidence tending to show that, after an attempt to organize an association by the execution of articles of incorporation, the associates held meetings and did business in a corporate capacity, is admissible without producing the corporate records or accounting for their loss, when such evidence does not purport to give the contents of corporate records or documents.  *Johnson* v. *Okerstrom,* 70 Minn. 303, 308 (73 N. W. 147) ; *Leavengood* v. *McGee,* 50 Or. 233 (91 Pac. 453). *Officers of Bank of Manchester* v. *Allen,* 11 Vt. 303, 306 ; 3 Enc. of Ev., p. 614; *Methodist Church* v. *Picket,* 23 Barb. (N. Y.) 436; 19 N. Y. 482; *Sampson v. Bowdenham Steam Mill Corporation,* 36 Me. 78 ; *Trustees* v. *Froslie,* 37 Minn. 447 (35 N. W. 260).

2. If an association assuming to act as a corporation has been so far organized in compliance with a statute as to be a *de facto* corporation, it is the general rule that its existence as a corporation cannot be collaterally attacked,

though its organization be so defective that the State might bring a direct proceeding against it to oust it from the exercise of corporate powers. *Marsters* v. *Umpqua Oil Co.,* 49 Or. 374 (90 Pac. 151: 12 L. R. A. [N. S.] 825).

3. By the weight of authority an association is a *de facto* corporation within this rule, when the associates have, in good faith, attempted to organize as a corporation under a valid law for a lawful purpose, and have colorably or apparently complied with the requirements of the law, and afterwards assumed to exercise corporate powers under the law. *Gilman* v. *Druse,* 111 Wis. 400 (87 N. W. 557).

4. The failure to comply with the mandatory requirements of the statute in organizing a corporation will prevent the formation of a corporation *de jure.* This, however, does not necessarily prevent the formation of a *de facto* corporation. "It is entirely settled," said the New Jersey court, "that the corporate existence of such corporation *de facto* cannot be inquired into collaterally. * * The legality of its corporate existence may be inquired into by the State, but not by any one else." Clark and Marshall, Private Corporations, § 80, citing *Stout* v. *Zulick,* 48 N. J. Law, 599 (7 Atl. 362). See, also, 1 Thompson, Corporations, § 234. In 3 Enc. of Ev., 614, we find the rule:

"Proof of user must necessarily consist of evidence of corporate acts showing that they are doing business under their charter. Any acts tending to show this are admissible for that purpose, as, for example, maintaining an office, having officers acting in the name and as the agents of the corporation, executing instruments for and on behalf of the corporation, and for purposes for which the corporation was organized; in other words, doing the very business and in the very manner pointed out by the statute, and in the name of the corporation."

In the case of *Franke* v. *Mann,* 106 Wis. 118 (81 N. W. 1014: 48 L. R. A. 856), it was held that where articles of

incorporation of a religious society were signed in form as
required by statute except as to acknowledgment, and
were recorded, the corporation organized, the right to
exercise the corporate franchise asserted, and the
franchise used in good faith, a corporation *de facto* was
created sufficient to entitle it to sue to protect its property.

5. Trustees of a *de facto* corporation are capable of
taking title to and holding real estate. The legality of
such an organization can be questioned only by the State
in a suit brought for that purpose. *Leavengood* v. *McGee,*
50 Or. 233 (91 Pac. 453). See, also, *Trustees* v. *Froislie,*
37 Minn. 447 (35 N. W. 260) ; *Society Perun* v. *Cleveland,*
43 Ohio St. 481 (3 N. E. 357) ; *Methodist Church* v.
*Picket,* 23 Barb. (N. Y.) 436, 19 N. Y. 482; *Finnegan*
v. *Noerenberg,* 52 Minn. 239 (53 N. W. 1150 : 18 L. R. A.
778), 38 Am. St. Rep. 552; *Franke* v. *Mann,* 106 Wis. 118
(81 N. W. 1014 :48 L. R. A. 856) ; *Baltimore & Potomac
Railroad Co.* v. *Fifth Baptist Church,* 137 U. S. 568 (11
Sup. Ct. 185 : 34 L. Ed. 784). A corporation *de facto* is
protected by the same law and governed by the same legal
principles as a corporation *de jure,* so long as the State
acquiesce in its existence and exercise of corporate
powers; and a private citizen whose rights are not
invaded has no right to inquire collaterally into the
legality of its existence. *Owensboro Wagon Co.* v. *Bliss,*
132 Ala. 253 (31 South. 81 : 90 Am. St. Rep. 907). As to
the sufficiency of the evidence offered for the purpose of
showing that the lodge was a *de facto* corporation, it
appears that the society was attempted to be incorporated
under the provisions of the statute providing for the
incorporation of religious, benevolent, literary, educa-
tional, and scientific or charitable societies. This act with
amendments is now Section 6784, L. O. L., and such
organizations are recognized by the laws of this State.
We can conceive of no other purpose for such incorpor-
ation than to hold title to and manage the property in

controversy. It is shown by the evidence tendered that this purpose was fully carried out, and that the conveyance of the property was executed to the trustees. At the time defendant took possession thereof the evidence offered purports that the property was being used for the purpose indicated. The building thereon was used as a repository for the regalia, ritual, and archives of the lodge, and afforded a convenient place for this benevolent society to hold its meetings and further its charitable aims and purposes for the uplift of mankind. It would therefore seem that there was little necessity for the introduction of the records of the lodge meetings. Many of such societies are secret. In so far as the business of the corporation is concerned, it appertained to the purchasing, obtaining title to, preparing, and managing the building. The lodge work could have been carried on without incorporating the society. In many of the cases cited, the corporations therein referred to were organized purely for business purposes and profit, and certificates of stock were issued. In the case at bar the lodge was not organized for gain, and there is no question in regard to the issuance of "watered" or other kind of stock. The articles of incorporation tendered in evidence contain the specificitions required by Section 6787, L. O. L. (Laws of 1864). Section 6788, L. O. L., which was also in force at the time of the attempted incorporation, provided among other things that such a corporation shall have power (subdivision 4) to purchase, receive, possess, and dispose of such real property as may be necessary or convenient to carry out the object of said corporation.

6. In our opinion there was sufficient *prima facie* evidence to show that the lodge was a *de facto*, corporation, and the objections to plaintiffs' evidence should have been overruled.

7. Moreover, the conveyance of the property in question was executed to T. W. Davenport, F. Wilbur, and S. T.

Hobart, trustees elected by Silver Lodge No. 36, Independent Order of Good Templars, and their successors, for the purpose of holding in trust and managing the same. It has long been a settled principle that unincorporated societies created for religious, benevolent purposes are capable of becoming beneficiaries of a specific trust, when organized so as to entitle them to become incorporated under the laws of the State. The trustees of such societies are competent grantees, capable of holding title to real property, and have legal capacity to sue to protect the same. *Trustees of the Methodist Episcopal Protestant Church at Jefferson* v. *Adams,* 4 Or. 76; *In re John's Will,* 30 Or. 510 (47 Pac. 341: 50 Pac. 226: 36 L. R. A. 242). Hence it is not absolutely essential in this case that plaintiffs prove that the lodge was incorporated.

8. It is contended by counsel for defendants that to allow plaintiffs' claim as an unincorporated society would be a variance from the theory of the case as set forth in plaintiffs' complaint, but we do not so view the matter. The allegations in regard to the incorporation of the lodge we think might be treated as surplusage, leaving a sufficient allegation as to an organized benevolent society to be proven. The conclusions which we have reached render it unnecessary for us to determine whether or not the defect in the articles of incorporation of the society was cured by either of the legislative enactments of 1903 contained in Sections 6682 and 6784, L. O. L. The cause should have been submitted to the jury, and it was error to grant defendants' motion for a nonsuit.

The judgment of the lower court must be reversed, and the cause remanded for a new trial, and it is so ordered.

REVERSED.

MR. JUSTICE BURNETT took no part in the consideration of this case.