## INDUSTRIAL BLDG. & LOAN ASS'N v. WILLIAMS et al.

No. 18211.   Opinion Filed June 5, 1928.

(Syllabus.)

1. **Corporations—Legal Existence of Corporate Entity not to Be Questioned by Those Having Contracted with It.**

The legal existence of a corporate entity may not be inquired into by those with whom it has, in the name and capacity of such entity, contracted.

**2. Same—De Facto Corporations—Binding Effect of Contracts.**

Where proper articles of incorporation are regularly executed and delivered to the Secretary of State, who accepts and files same, and thereupon issues a certificate of incorporation under the seal of the state, and such corporation thereafter purchases and takes over by warranty deed in its corporate name real estate suitable for the purpose of its business, and subsequently secures from a building and loan association a loan, for which it gives its promissory note secured by a mortgage upon the real estate aforesaid, all of which papers are executed in its corporate name, such acts constitute acceptance of charter, and the concern is, at the least, a de facto corporation, bound by its corporate contracts, and liable to those with whom it so deals.

**3. Same—Nonliability of Individual Incorporators on Note and Mortgage Executed by De Facto Corporation.**

Under facts set out in paragraph 2, where the loan association, upon default in payment, seeks judgment against the individual incorporators on the note and for the foreclosure of mortgage upon a petition to which are attached copies of such corporate note and mortgage, and duly verified copies of corporate minutes authorizing such note and mortgage, and where said individuals are neither makers nor indorsers of such note, but are sought to be held solely on the allegation that there was no such corporation, that no steps subsequent to issue of charter were taken to complete the organization of corporation, and that no meeting to authorize the loan was held, and where there is no allegation that the corporation has in any manner denied liability, the petition is insufficient to charge such individuals, and the trial court did not err in sustaining demurrer thereto.

Commissioners' Opinion, Division No. 2.

Error from District Court, Creek County; Fred A. Speakman, Judge.

Action by Industrial Building & Loan Association to charge J. Clay Williams et al. with individual liability on note and real estate mortgage of Bristow Emergency Hospital. Demurrer to petition sustained, and plaintiff brings error. Affirmed.

West & Petry, for plaintiff in error.

J. H. Grant. Walker & Lewis, and Laux & Robinson, for defendants in error.

BENNETT. C. This was a civil action begun in district court, Creek county, Okla., by Industrial Building & Loan Association, a corporation, against J. Clay Williams et al., defendants, to recover of defendants on a promissory note for $3,500 dated February 8. 1926. executed by Bristow Emergency Hospital, by J. Clay Williams, secretary, and W. G. Bisbee, president, payable to plaintiff, and secured by real estate mortgage in usual form between same parties covering lot 15 and west half of lot 16, block 11, original town site of Bristow, Okla. Defendants filed a demurrer to plaintiff's petition which was sustained. Thereupon, plaintiff, without amending, elected to stand upon such petition, and judgment was accordingly rendered in favor of defendants, dismissing plaintiff's cause and allowing plaintiff proper exception. This cause is brought here for review of action of trial court. Plaintiff assigns error as follows: (1) That court erred in sustaining defendant's demurrer to petition; (2) that judgment in favor of defendant is contrary to law and contrary to facts set forth in petition. These points are argued separately in brief of plaintiff in error, but they may be treated together, since they raise but a single point

Was the petition subject to demurrer? The petition in substance is as follows: That plaintiff is an Oklahoma corporation engaged in business of building and loan association; that defendants, on December 29, 1922, executed and filed in office of Secretary of State of Oklahoma articles of incorporation, whereby they associated themselves together for purpose of forming a corporation under the name of Bristow Emergency Hospital, Inc., and that thereupon the Secretary of State issued to defendants a certificate or grant of corporate power, but that defendants thereafter failed to perform the proper requirements for organization and perfection of such corporation, and that said defendants, without having performed those necessary acts, proceeded to assume powers of and to act as a corporation. They allege, among other things, that no by-laws were adopted, no stock issued, and no board of directors elected and no report filed with Corporation Commission. That said defendants, in assuming to act as such corporation, borrowed from plaintiff $3,500 and executed promissory note and mortgage in payment of which default was made, and petition further alleges that "this action is against defendants individually to recover upon said note and to foreclose said mortgage," copies of which note and mortgage are attached to plaintiff's petition and made part thereof and identified as exhibit B and C, respectively. There is also attached to and made a part of the plaintiff's petition and marked "Exhibit A," a copy of minutes of a meeting of board of directors of said corporation held in Bristow February 4. 1924. at 11 o'clock a. m., authorized and directing said defendants W. G. Bisbee and J. Clay Wil-

liams to execute and deliver to plaintiff the promissory note and real estate mortgage of said Bristow Emergency Hospital covering said real estate and premises above described, and securing said plaintiff for a loan of $3,500, represented by note aforesaid; also, that on the —— day of February, 1923, said J. Clay Williams, the then owner of the real estate hereinbefore described, executed and delivered a warranty deed conveying said real estate to said Bristow Emergency Hospital, and that said deed was recorded in office of county clerk of Creek county in deed book 268, page 374 That February 4, 1924, said J. Clay Williams, W. G. Bisbee and E. W. King made an oral application for a loan of $3,500 from plaintiff, tendered as security therefor a real estate mortgage upon above-described real estate, and represented in writing that said Bristow Emergency Hospital was an Oklahoma corporation duly organized, and furnished a copy of minutes of a meeting as shown in exhibit A. Plaintiff alleges that no such meeting was in fact had, but that the statement was false, and that plaintiff relied upon the statement and believed Bristow Emergency Hospital was a corporation organized under laws of Oklahoma, and had a board of directors who had taken action on the application for the loan. That plaintiff agreed to loan said corporation $3 500, but if it had known the statement with respect to minutes was not true, it would not have made the loan. That February 8, 1924, in consideration of such representations, plaintiff made the loan and accepted note and mortgage as hereinbefore referred to; that there has been default in payment of said note and the mortgage is in default, and there is now due thereon something over $4,000. It is alleged that there is located upon said real estate a frame and stucco building designed as a hospital; that the said building is now vacant, and has been wholly abandoned by said defendants; that the value of said property does not exceed $2,000. Exhibit A, referred to above, indicates that all the company directors were present pursuant to call and waiver of notice, and after discussion of plans to pay existing indebtedness of company, it was decided that a loan of $3,500 should be procured, and the officers were authorized and instructed to make application for such loan and to execute note and mortgage of corporation on real estate aforesaid to secure same. This certificate of minutes was subscribed and sworn to before notary public by secretary of company.

There are other facts set out in petition, but we believe the foregoing represents the substantial facts therein contained.

It will be seen plaintiff based its petition upon the theory that Bristow Emergency Hospital, Inc., was not a corporation by reason of its failure to comply with statutes of Oklahoma with reference to completion of its organization, and that there was no debt and no mortgage of such corporation; that, therefore, those who represented it to be such and contracted in its name became personally bound for the contract. Consideration of this question may be divided into the following questions: (1) Does filing of articles of incorporation with Secretary of State, and receiving from him a charter and undertaking to do business thereunder without further steps relative to organization constitute such persons a corporation for any purpose? and (2) Are persons who act under such corporation certificate as a corporation and make a contract in its name personally liable thereon? These questions can and should be treated together. The answer must depend to some extent upon the kind of suit in which these questions are raised.

We may say first that this is not a suit brought by the sovereign to question the regularity of the organization of this corporation. Throughout this long petition there is no allegation of fraud or bad faith, unless the same is deducible from the statement made in the latter part of the third paragraph and a part of the fourth paragraph wherein the plaintiff, speaking of the meeting wherein the directors authorized the loan and execution of the promissory note of the corporation secured by its real estate mortgage, says: "Plaintiff alleges the facts to be, however, that no such meeting was held, that the persons represented by said statement to be present were not present and said statement was wholly false," and that plaintiff relied thereon. The statement which he alleges to be false was simply a statement of the minutes disclosing that the directors of the company discussed means of raising money to pay their indebtedness, decided to borrow $3,500 on the note of the corporation secured by a real estate first mortgage on their property, and authorizing their president and secretary to make application for the loan and execute the necessary note and mortgage therefor. This is alleged to be false, and yet the officers so authorized applied for and secured the loan and executed the note and real estate mortgage of the corporation to secure the same, and there is no allegation that the corporation repudiated or attempted to escape this obligation, and it would seem certain that they cannot do so even if they would. The petition shows that it was an application by and for the benefit of the corporation; that

the loan was made to the corporation whose notes and real estate security were taken therefor. The plaintiff must needs have investigated the corporate responsibility of the company, or, if not, it must have loaned the money simply upon the security of the real estate. It appears that if the corporation had the power to make the note and mortgage, then plaintiff has the obligation of its debtor and the identical security upon which the loan was made. In short, plaintiff dealt with the company in all respects as a corporation and extended credit to the company as such. What, therefore, is the law with reference to this state of facts? Was this a corporation de jure? If not, was it a de facto corporation?

A de jure corporation is one whose right to exercise a corporate function would prove invulnerable if assailed by the state in quo warranto proceedings. Capps v. Hastings Prospecting Co., 40 Neb. 470, 58 N. W. 956. But an association may not be able to justify itself when called on by the state to show by what authority it assumes to be, and act as, a corporation. It may, however, be so far a corporation that, for reasons of public policy, no one but the state will be permitted to call in question the lawfulness of the organization. Such is what is termed a corporation de facto, that is, a corporation from the fact of its acting as such, though not in law or of right a corporation. Finnegan v. Noerenberg, 52 Minn. 239, 53 N. W. 1150. It is an apparent corporate organization, asserted to be a corporation by its members, and actually acting as such, but lacking the creative fiat of the law. In re Gibbs' Estate, 157 Pa. 59, 27 Atl. 383. It is essential to existence of de facto corporation that there be (1) a valid law under which a corporation with powers assumed might be incorporated; (2) a bona fide attempt to organize a corporation under such law; and (3) an actual exercise of corporate powers. Jones v. Aspen Hardware Co., 21 Colo. 263, 40 Pac. 457; R. C. L. vol. 7, pp. 60-61, par. 42.

It has been held even that a corporation, though organized under an unconstitutional special charter, is still a de facto corporation capable of making contracts, acquiring property and becoming bound to creditors by all acts which would have been binding upon it had it been incorporated under general state laws (Georgia S., etc., Ry. Co. v. Mercantile Trust, etc., Co., 94 Ga. 306, 21 S. E. 701), and that a corporation acting under an unconstitutional charter is at least a de facto corporation, and the state only can inquire into validity of its charter. Taylor v.

Portsmouth. etc., Ry. Co., 91 Me. 193, 39 Atl. 560. As a general rule a corporation de facto exists when, from defect in organization or constitution, or from some omission to comply with conditions precedent, a corporation de jure is not created, but there has been a colorable compliance with law under which an association might be lawfully incorporated for purposes and powers assumed, and a user of rights claimed to be conferred by law when there is an organization with color of law and exercise of corporate franchises. Snider's Sons' Co. v. Troy, 91 Ala. 224, 8 So. 658; Washington Nat. Building, Loan, etc., Ass'n v. Stanley, 38 Ore 319, 63 Pac. 489; Brown v. Webb, 60 Ore 526, 120 Pac. 387. The reason generally given for this is that if rights and franchises have been usurped, they are rights and franchises of the sovereign. and he alone can interpose. Until such interposition the public may treat those possessing and exercising corporate powers under color of law as doing so rightfully. The rule is in the interest of the public, and is essential to validity of business transactions with corporations. If business has been done by an association of persons claiming to be a corporation, and to be doing business as such, neither they nor the association will be permitted to question corporate existence for purpose of avoiding any° contract entered into in a corporate name, or of escaping any liability which would exist if the act done in the corporate name had been authorized by the pre-existence of corporate capacity. R. C. L. vol. 7, pp. 63, 64, par. 44, and cases cited.

Paragraph 45, same author, says:

"It would seem, upon principle, that the nature and character of the informality or defect in attempting to organize a corporation is immaterial, provided, notwithstanding its existence, it is apparent that there was an attempt in good faith to create a corporation, and that in like good faith there has been an assumption and exercise of corporate functions. (Citing Owensboro Wagon Co. v. Bliss, 132 Ala. 253, 31 So. 81; Western Inc. Co. v. Davis, 7 I. T. 152, 104 S. W. 573; Pape v. Capitol Bank of Topeka, 20 Kan. 440, 27 Am. Rep. 183). * * * And it has been held immaterial that the statutory requirement with which there was a failure to comply was mandatory as distinguished from directory." (Citing Brown v. Webb, 60 Ore 526, 120 Pac. 387.)

"A corporation de facto may legally do and perform every act and thing which the same entity could do or perform were it a de jure corporation. As to all the world except the paramount authority under which it acts, and from which it receives its char-

ter, it occupies the same position as though in all respects valid. * * * So bonds, deeds, and mortgages executed by a de facto corporation are valid, not only as against the corporation itself, but also as against anyone making a claim upon its assets, whether as a creditor directly of the corporation, or as a creditor of its creditors or stockholders." (Citing Georgia S., etc., Ry. Co. v. Mercantile Trust, etc., Co., 94 Ga. 306, 21 S. E. 701.)

And in the 49th paragraph of 7 R. C. L., p. 68:

"It is a general rule that the legality of the existence of a de facto corporation is not subject to collateral attack by individuals. * * *" (Citing cases from scores of jurisdictions, including Douglass County Com'rs v. Bolles, 94 U. S. 104, 24 L. Ed. 46.)

This rule has been followed by our court in case of Swofford Bros. Dry Goods Co. v. Owen, 37 Okla. 616, 133 Pac. 193, in which the rule is announced by court as follows:

"The legal existence of such a corporation cannot be inquired into by those with whom, as a corporation, it has contracted, though the legality of its corporate existence may be inquired into by the state in an action brought by it in the manner prescribed by statute."

The court in the Swofford Case, quoting Cook on Corporations (4th Ed.) sec. 234, says:

"During the past few years, however, the great weight of authority has clearly established the rule that, where a supposed corporation is doing business as a de facto corporation, the stockholders cannot be held liable as partners, although there have been irregularities, omissions, or mistakes in incorporating or organizing the company. The corporation is a de facto corporation where there is a law authorizing such a corporation, and where the company has made an effort to organize under that law and is transacting business in a corporate name. * * * It must be admitted that this conclusion of the law is reasonable and just. There is no reason why parties who have dealt with a corporation as a corporation should afterwards be allowed to claim more than they originally bargained for, and to hold the stockholders personally liable. Such a rule would be disastrous in the extreme." (Citing several cases.)

The court further quoting from Cahall v. Association (61 Ala. 232) says:

" 'Whoever contracts with a corporation, in the use of corporate powers and franchises, and within the scope of such powers, is estopped from denying the existence of the corporation, or inquiring into the regularity of the corporate organization, when an enforcement of the contract, or of rights arising under it, is sought.' "

See, also, Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050, in which the court says:

"It seems to us entirely clear that both parties understood and meant that the contract was to be and in fact was with the corporation, and not with the defendants individually. The agreement thus made could not be afterwards changed by either of the parties without the consent of the other. (Utley v. Donaldson, 94 U. S. 29, 24 L. Ed. 54.)"

See, also, the case of Estey Mfg. Co. v. Runnels, 55 Mich. 130, 20 N. W. 823. In Claussen v. Head, 110 Wis. 405, 85 N. W. 1028, the syllabus is as follows:

"Where a person deals with an association of individuals as a corporation, such dealing, by estoppel, as to such transaction, fixes the status of the company to be what it was represented and recognized to be therein." (This case cites numerous authorities to the same effect.)

Section 5308, C. O. S. 1921, is as follows:

"Upon the filing of the articles of incorporation with the Secretary of State, he shall issue to the corporation, over the great seal of the state, a certificate that the articles containing the required statement of facts have been filed in his office; and thereupon the persons signing the articles, and their associates and successors shall be a body politic and corporate by the name and for the purposes stated in said articles."

It will be observed that corporate existence does not wait or depend upon election of officers or any other precedent act. Section 5299 provides that there must be an acceptance of a grant of corporate authority. Perhaps this is not necessary where incorporators file voluntary certificate under general laws. Spring Valley Water Works v. San Francisco Co., 22 Cal. 434. But if so, the succeeding paragraph provides that it may be proved like any other fact. We take it that the highest proof of acceptance is the user of franchise, such as the taking of title to real estate suitable for corporate purposes and encumbering same.

Section 5293, C. O. S. 1921, is as follows:

"The due incorporation of any company, claiming in good faith to be a corporation under this chapter, and doing business as such, or its right to exercise corporate powers, shall not be inquired into collaterally, in any private suit of which such de facto corporation may be a party; but such inquiry may be had, and action brought, at the suit of the state, in the manner prescribed in civil procedure."

The above has been construed in Higbee v. Aetna Bldg. & Loan Ass'n, 26 Okla. 327, 109 Pac. 236.

Section 5310, C. O. S. 1921, is as follows:

"A copy of any article of incorporation filed in pursuance of this article, and certified by the Secretary of State, must be received in all courts and other places as prima facie evidence of the facts therein stated, and of the existence of such corporation."

Sections 5332 and 5335 direct what corporations shall do with respect to election of officers and formulation of by-laws after incorporation, but none of these duties are made conditions precedent, nor are they made a prerequisite to doing business. Section 5304, C. O S. 1921, which provides the form of articles of incorporation, in fifth subdivision, says:

"The number of its directors or trustees, and the names and residences of such of them who are to serve until the election of such officers and their qualifications."

It will, therefore, appear from the statutory provisions quoted above that Bristow Emergency Hospital, upon filing its articles of association and receiving from the Secretary of State his certificate, became **immediately** a corporation vested and clothed with powers of such under laws of this state; and, if so, the members of such corporation, as natural persons, were merged in the corporate identity. Button v. Hoffman, 61 Wis. 21, 20 N. W. 668.

"The creation of the corporation merges in the artificial body and draws into it the individual rights and liabilities of the members who thereafter can speak only through the officers and directors of the corporation." Bank v. Dandridge, 12 Wheat. (U. S.) 91, 6 L. Ed. 552; Bank of California v. San Francisco, 142 Cal. 276, 75 Pac. 832.

Failure to organize (after securing charter) does not make stockholders liable where business is carried on by corporation without organization. Cory v. Lee, 93 Ala. 468. In Mokelumne, etc., Co. v. Woodbury, 14 Cal. 425, later referred to with approval in Abbott v. Omaha Smelting Co., 4 Neb. 416, it is said:

"The right of the plaintiff to be considered a corporation, and to exercise corporate powers depends upon the fact of the performance of the particular acts named in the statute as essential to its corporate existence. * * * The intention of the Legislature clearly was that so far as individuals are concerned, the corporation should acquire a valid legal existence upon the filing of the certificate. The filing of the duplicate is exclusively a matter between the corporation and the state. The rights and privileges conferred by the statute vest in the corporation upon the filing of the certifi-

cate, and can be divested only by a direct proceeding for that purpose. If the duplicate had not been filed, the assumption of corporate powers amounts simply to a usurpation of the sovereign rights of the state, the remedy for which rests with the state alone."

The earlier cases are cited and a comprehensive discussion of this question may be found in Western Investment Co. v. Davis, 7 I. T. 152, 104 S. W. 573. This case sets out clearly just when corporate existence begins and declares that statutory provisions marking out duty of corporations subsequent to receiving their charters are not conditions precedent to existence, and that incorporators, after charter issued, are immune from personal liability.

In Bank v Rockefeller, 195 Mo. 15, will be found an exhaustive review of authorities from many states. That case bears striking similarity to case at bar. The facts alleged were not only alike, but in each case a like demurrer was filed and sustained. The court, after discussing various decisions and the several supporting statutes, reached a conclusion which supports our holding in this case.

In vol. 1, Fletcher's Cyclopedia of Law of Private Corporations, sec. 301, it is said:

"Generally, the fact that the corporation was not organized within the time limited by the character, or the general law, does not prevent it from becoming a corporation de facto, nor render its existence subject to collateral attack, nor as a ru'e will such results follow from the fact that the corporation was organized before the articles or certificate of incorporation were acknowledged or recorded, or that there was a failure to give the notice required by the statute of the meeting for the purpose of organization; or that there were informalities in the proceedings of such meetings; or that no certificate of organization was executed or filed. And the same has been held to be true, though no board of directors has been elected, and though there were irregularities with respect to the number, term, place of residence and of meeting of the board of directors, or some of the persons chosen as directors are not qualified."

Did the corporation make a user of its corporate charter? The petition states, first, that it took over by deed real estate sufficient for a loan of $3,500; second, that it made note and mortgage securing loan of $3,500; and, third, we think there is sufficient allegation to justify the inference that they took over real property and used it for a while as hospital property.

"The courts have never required the transaction of any considerable amount of busi-

ness in order to establish user, but in the main hold that the performance of any act by the corporation as such within the limits of its powers under its charter constitutes user." Fletcher's Cyclopedia of Law of Private Corporations, vol. 1, sec. 303.

And section 307 of the same authority says:

"A mortgage made by or to a corporation de facto is as valid as if it were made by or to a corporation de jure, and cannot be attacked on the ground of want of incorporation either by the mortgagor or by persons claiming under him, or it, or by third persons." (Citing First Baptist Church of San Jose v. Branham Sheriff [Cal.] 27 Pac. 60.)

If plaintiff relies upon fraud, waiving for the moment the question of the sufficiency of allegations for that purpose, could its allegation that the meeting which authorized the loan was never held, avail plaintiff? To constitute deceit or fraud, the allegation must not only be false, but fraudulent, made for the purpose of deceiving, calculated to deceive, and which actually did deceive, complainant, to its damage. The corporate defendant has not denied liability nor the validity of the note and mortgage, and since it has accepted the proceeds, it cannot do so. What difference could it make to plaintiff whether the meeting was held or not?

Plaintiff loaned the exact amount of money, upon the exact security, to the identical parties to whom it understood it was lending it, and it has their note and their real estate mortgage representing such loan. How, therefore, has the plaintiff been misled to its hurt? In the case of Martin v. Ford Motor Co., 66 Okla. 143, 167 Pac. 992, it is held:

"A petition attempting to plead a cause of action for fraud, and deceit, which fails to show any damage resulting to plaintiff from such alleged fraudulent acts, does not state a cause of action."

The elements of actionable fraud are set out in the case of Wingate v. Render, 58 Okla. 656, 160 Pac. 614. Plaintiff seeks to take advantage of an irregularity, which, if available to anyone (and this we doubt), was available to defendant only   Certainly, plaintiff did not lend its money upon the credit of these individual incorporators, else he would have taken their promissory notes. In the case of Chieppo v. Chieppo (Conn.) 90 Atl. 940, almost this identical question has been passed upon. The amended complaint alleged that defendants filed certificate of incorporation; that they thereupon engaged in business and falsely and fraudulently held themselves out to plaintiff as a corporation authorized to do business, and

plaintiff, relying upon these representations, loaned them money for which it took their promissory note; plaintiff further alleged that it was not then a corporation; that it had not filed its certificate of organization, and had not organized to do business. Plaintiff sued defendants individually upon the theory that they were liable because their principal (the corporation) was incapable of making the note, not being organized, and therefore the defendants should be held without allegation or proof of any demand on or refusal to pay by the corporation. The court held that upon issuance of certificate by the Secretary of State, the corporation came into existence, and that since loan was made for use of corporation, which received benefit of same, it was liable even if the organization had never been completed, and the court uses this language:

"It follows that the individual liability of an agent who makes a business contract in the name of an existing corporation not yet completely organized is to be governed by the rules which ordinarily prevail where one contracts as agent for a named principal without sufficient authority. In such cases the agent is not liable or bound by the contract, because nobody intended that he should be so bound; but if, by reason of his lack of authority, the contract is not enforceable against the alleged principal, the party who has been induced to contract on the faith of the agent's authority has one of two remedies. If the agent honestly believed that he had an authority which he did not possess, he may be sued on an implied warranty of authority   If he knew or (as in this case) ought to have known that he had not the authority which he professed to have, he may be sued in the action of deceit.   Starkey v. Bank of England, 1933 A. C. 114; Noyes v. Loring, 55 Me. 408. * * *

"But in such cases there can be no breach of warranty or actionable deceit if the principal is in fact bound by the contract. If the principal is bound, the other party has no ground of complaint against the agent. And it can make no difference whether the principal is bound because the agent was authorized in advance, or because of a subsequent ratification, or because the principal is estopped to deny that the agent was in fact duly authorized. If for any reason the principal is bound by the contract, the other party, who contracted with the principal, and not with the agent, has received all that the agent agreed or assumed to procure for him.

"In the present case the corporation became directly liable on the note, on the principles of ratification or estoppel, as soon as its certificate of organization was filed, and it was legally authorized to execute such a note; and although the defendants were bound as corporators to know that they did not have authority until then

to execute a note for business purposes in the name of the corporation, yet their liability to answer for the consequences in an action of deceit ended when the liability of the corporation on the note attached."

Applying the law of that case to the case at bar, the Emergency Hospital was a legal corporation. It was estopped to deny its own note and mortgage as such corporation, and since it was so liable on the note and mortgage, the individual defendants were not liable.

We have given careful attention to authorities cited in brief of plaintiff in error. Most of these cases are based upon statutes unlike ours; several involve condemnation, and, upon the theory that the right to condemn is an attribute of sovereignty and is arbitrary in so far as it relates to landowner, it constitutes an exception to the rule, and the condemning plaintiff must show a complete organization, the election of officers, etc. This is shown plainly in the opinions. Several others are quo warranto proceedings, and, of course, inapplicable. For instance, in Missouri, it is required that one-half the subscriptions for stock be paid in before certificate issues. O'Kell v. Chama (Mo.) 168 S. W. 887. In Maryland, a statute makes payment of bonus tax a condition precedent to existence. In Ohio, the mere filing of articles in due form does not create the corporation. State ex rel. v. Insurance Co., 49 Ohio St. 440, 31 N. E. 658.

It should be observed that plaintiff seeks to recover against defendants a money judgment upon the theory that the corporation which they represented never existed for any purpose, and yet plaintiff seeks to foreclose a mortgage made by this corporation on real estate to secure its note to plaintiff. It has been held that by seeking to foreclose a mortgage made by an alleged invalid corporation, complainant affirmed existence of mortgage. Gow v. Collin & Parker Lumber Co., 109 Mich. 45, 66 N. W. 676. It occurs to us that if the mortgage exists, the mortgagor must have existed.

The courts are not unanimous in holding incorporators immune from liability where obligations have been incurred before complete organization of a corporation, but under our statute and authorities, and under more recent cases cited by Cook on Corporations, we think the rule herein announced is the sounder doctrine.

For the reasons given, we hold that the court in sustaining the demurrer to peti-

tion committed no error, and judgment of trial court is affirmed.

FOSTER, LEACH, TEEHEE, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 14 C. J. p. 228, §236. (2) 14 C. J. p. 208, §217; 7 R. C. L. p. 106; 2 R. C. L. Supp. p. 297; 4 R. C. L. Supp. p. 468; 6 R. C. L. Supp. p. 431. (3) 14 C. J. p. 212, §220.