WILLIAM NOYES *& al., Appellants, versus* SAMUEL V. LORING.

The only remedy against one who falsely represents himself as an agent of a town and authorized to contract for it, and does so contract without authority, is an action on the case founded on deceit.

Thus, where the defendant, a deputy collector of town taxes, directed the plaintiffs to publish an advertisement requesting tax-payers to pay their taxes to him forthwith, and charge the price of such publication to the town; and the plaintiffs followed the defendant's direction, but the town denied the defendant's authority to contract for the publication and refused to pay for the same; in assumpsit against the defendant for the price;— *Held*,—1. That case was the only remedy against the defendant.

2. That the plaintiffs could not waive the tort and bring assumpsit.

ON EXCEPTIONS.

INDEBITATUS ASSUMPSIT on account annexed, as follows: "1865, Oct. 17. To advertising taxes, 2½ sq., 18 w. $14,37."

The writ contained also a count for money had and received, and *quantum meruit*, for services, &c.

At the trial at *nisi prius*, it appeared that one Perkins was duly elected treasurer and collector of Saco for the year 1865; that, at the annual meeting, the town voted an abatement to those who should voluntarily pay their taxes on or before certain specified days, and that notifications of this vote and of the time when the tax-bills were committed to him, were duly posted up in post-bills, by the treasurer, the expense of printing and posting which was paid by orders drawn upon the selectmen.

It also appeared that, in October, 1865, after the expiration of the time for the allowance of such abatements, Perkins appointed the defendant assistant collector; that the defendant was duly qualified, and he gave bond for the faithful discharge of his duties; whereupon the tax bills of the unpaid taxes, amounting to between $17,000 and $18,000, were committed to him. The defendant then prepared a notice of his appointment, with a request that all who had not paid their taxes would forthwith make payment thereof at his office; and requested the plaintiffs to print a certain number of copies thereof in the form of post-bills, and to insert the same as an advertisement in the newspaper published by them in Saco till otherwise ordered, and to charge it to the town. And the plaintiffs did as requested.

In March or April following, the plaintiffs presented a bill for printing done for the town, including the charges for the printing ordered by the defendant, to the selectmen of Saco; but they refused to allow the items ordered by the defendant, denying his authority to order the work done at the town's expense. Subsequently, however, they drew an order for the post-bills, but refused to allow the charge for publishing the advertisement, although it was the usual price. The defendant also refused to pay the same.

It also appeared that, when the printing was ordered by the defendant, he did not intimate in anywise that he would pay therefor. It was charged to the town.

The presiding Judge instructed the jury that the action was upon a contract. That to support the action a contract must be proved. That a contract consists of mutual promises ; that two kinds of promises are recognized in proof of contracts, one is a special promise and the other an implied promise. That the special promise is shown where the parties definitely and specifically fix the terms and conditions of their contract. The implied promise is a promise implied and arising from the acts and circumstances proved in a case where no special promise is proved. They consist of such acts and circumstances as raise in law an implication of those promises necessary to complete a contract.

That, where there is a special contract founded upon special promises, the law does not imply promises inconsistent with those. The special promise excludes the idea of an implied one. The parties having seen fit to make their own terms and engagements, the law leaves them upon those terms.

That, in this case, the contract being an oral contract, if any were made, it is a question for the jury to find what that contract was. That, if there was a special contract to do the work and look to the town for pay, the parties, being legally competent to make a contract, must abide by the terms of it.

That, if there was a special contract in this case, the fact that the services rendered may have operated to the benefit of the defendant does not relieve the parties from the legal effect of their special contract. They were competent to make it as they did, and must abide by it.

That, if the defendant represented himself as an agent of the town and authorized to contract for them, and did so contract, and was not so authorized, he might be liable in another form of action to the plaintiffs, but not in this action, for any damage resulting therefrom to the plaintiffs.

The verdict was for the defendant, and the plaintiffs alleged exceptions.

*Philip Eastman & Son*, for the plaintiffs, contended that the instructions relative to special and implied contracts, were inapplicable, and misled the jury. Counsel cited *Jefts* v. *York*, 10 Cush., 392; *Folsom* v. *Skofield*, 53 Maine, 171. To the point that the action was maintainable under the count for services done, 1 Parsons on Contracts, c. 3, § 7.

*John M. Goodwin*, for the defendant.

WALTON, J.—The remedy against one who fraudulently represents himself as the agent of another, and in that capacity undertakes to make a contract binding upon his principal, is an action on the case for deceit, and not an action of assumpsit upon the contract. *Long* v. *Coburn*, 11 Mass., 97; *Ballou* v. *Talbot*, 16 Mass., 461; *Jefts* v. *York*, 4 Cush., 371; *Abbey* v. *Chase*, 6 Cush., 54; *Jefts* v. *York*, 10 Cush., 392; *Smout* v. *Ibery*, 10 Mees. & Welsb., 1; *Jenkins* v. *Hutchinson*, 13 Ad. & El., N. S. 744.

The gist of the action in such cases is not a failure to keep and perform a promise, but a false representation. Why then should the injured party be allowed to bring an action of assumpsit? If one without authority undertakes to make a contract for another, the contract is necessarily void. It is not the contract of the principal, for the pretended agent had no power to bind him. It is not the contract of the agent, for in making it he did not attempt to bind himself. How then can such a contract be the basis of a suit? Very clearly it cannot.

Nor should the injured party be allowed to waive the special contract, waive the tort, and recover upon an implied assumpsit, for such a form of declaring gives the defendant no notice of the real cause of complaint against him. Take, for instance, the declaration in this case. It contains nothing but general *indebitatus assumpsit* counts on an account annexed. Who, on reading such a writ, would ever suppose that the real ground of complaint against the de-

fendant is·that he undertook to make a contract for the town without authority?

It may not indeed seem unjust that the party who has undertaken to contract for another without authority should be held to perform the contract himself. In fact the law seems to have been so held in an early case in New York. (*Dusenberry* v. *Ellis*, 3 Johns. Cas., 70.) It was there held that one who without authority signed a promissory note as attorney for another was personally bound to pay it. But the inconsistency of such a doctrine, to use no stronger term, will be apparent by supposing that instead of a promise to pay money, the pretended agent had signed a promise that his principal should marry the plaintiff within a given time, or do some other act which it was perfectly competent for the principal to perform, but which the agent could not. What would be thought of a declaration charging the pretended agent as a principal in such a case?

It is undoubtedly true that if a person falsely represents that he possesses an authority which he does not possess, and another is injured by such misrepresentation, he is liable; but the remedy should be sought in a proper form of action. The plaintiff should not be allowed to allege neglect to keep and perform a promise, and then recover for a false and fraudulent allegation of authority.

But the plaintiffs claim that, inasmuch as the labor which they performed was beneficial to the defendant, he ought to pay for it; and that they may waive the tort, if any, which the defendant committed, and recover the value of their services in an action of assumpsit. No case has been cited in which such a course has been allowed; and, in *Jones* v. *Hoar*, 5 Pick., 285, the Court say that the doctrine, that the injured party may waive the tort and bring assumpsit, is allowed only to this extent, that one whose goods have been taken from him or detained unlawfully, whereby he has a right to an action of trespass or trover, may, if the wrongdoer sell the goods and receive the money, waive the tort, affirm the

sale, and have an action for money had and received for the proceeds.

So, if one acting as the agent of another without authority, receives money, and has not paid it over to the principal, it may be recovered back in an action for money had and received. *Jefts* v. *York*, 10 Cush., 392.

But it is only in favor of the action for money had and received, which has been likened in its spirit to a bill in equity, that the rule is relaxed that the evidence must correspond with the allegations, and be confined to the matter in issue, and this relaxation, by which a party is allowed to aver a promise and recover for a tort, being a departure from principle and the correct rules of pleading, ought not to be extended to new cases.

Our conclusion therefore is, that the ruling of the presiding Judge, to which exception is specially taken, namely, " that, if the defendant represented himself as an agent of the town, authorized to contract for them, and did so contract, and was not so authorized, he might be liable in another form of action, but not in this," was correct.

The other rulings of the presiding Judge, reported in the bill of exceptions, seem to require no further notice than to say that they are in accordance with well settled principles of elementary law, and, so far as we are able to judge from the brief report of the evidence contained in the bill of exceptions, were pertinent to the issue.

*Exceptions overruled.*
*Judgment on the verdict.*

APPLETON, C. J., KENT, BARROWS, DANFORTH and TAPLEY, JJ., concurred.