PATRICK J. SULLIVAN vs. MICHAEL C. MANCINI.

Third Judicial District, New Haven, June Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

One who, without authority, professes to contract as agent for an-
other, is not bound by the contract, since there was no intention
that he should be, nor, if the transaction be a sale, can he be
held to warrant the worth or genuineness of the thing sold, or
the title of his supposed principal thereto; but he is liable on an
implied warranty of authority, if he believed in good faith that
he had the authority, and in an action of deceit if he knew or
should have known that he had not such authority.

The legal foundation underlying such liability is that the assertion
of the fact of agency, whether by word or conduct, amounts to
a representation made for the purpose of influencing the conduct
of another which cannot be denied for the purpose of escaping
responsibility for such injury as may result from the other's
reliance thereon.

In the present case, P stole a note and mortgage owned by his
father and, representing himself to be his father, whose signa-
ture he forged, placed them in the hands of the defendant, a
mortgage broker, for sale. The defendant, acting in good faith,
sold them to the plaintiff, who was later obliged by judgment of
the Superior Court to return them to P's father. Held that the
defendant was liable to the plaintiff for breach of his implied
warranty of authority; and that the plaintiff was entitled to
recover the price which he had given for the securities, together
with the costs and counsel fees which he had paid in the action
brought against him by the true owner.

Argued June 4th—decided July 30th, 1925.

ACTION to recover damages from the defendant who,
as agent for the seller, negotiated the sale to the plain-
tiff of a note and mortgage which had been stolen by
the seller and to which he had no title, brought to the
Court of Common Pleas in New Haven County and
tried to the court, *Simpson, J.;* judgment for the de-
fendant, and appeal by the plaintiff. *Error; judgment
to be entered for plaintiff.*

Sullivan *v.* Mancini.

The material facts found are these: One Raffaela Pascarella was the owner of a second mortgage for $1,700, on certain real estate. In November, 1921, Domenic, son of Raffaela Pascarella, stole the note and mortgage, and exhibited them to the defendant, who held himself out as a dealer in mortgages. Domenic represented himself to be Raffaela, the owner, and stated that he desired to sell the mortgage for $1,100. It was agreed that the defendant should receive a commission of $50 in case he effected a sale at that price. The plaintiff had bought several mortgages from or through the defendant and upon inquiring whether defendant had any mortgages for sale, was shown the mortgage deed in question by defendant. After some negotiation he agreed to purchase the note and mortgage in question.

At a meeting on December 8th, 1921, arranged to close the transaction, Domenic did not appear, and defendant was unable to find him at the address given. On that occasion plaintiff handed $1,100 in cash to defendant, and defendant drew up a quitclaim deed from Raffaela Pascarella to the plaintiff, to which Domenic, on another day, forged Raffaela's signature, defendant taking the acknowledgment as notary public; at the same time Domenic forged Raffaela's indorsement of the note, and defendant paid Domenic the $1,100 less his commission. Defendant, after causing the quitclaim to be recorded, handed the papers to the plaintiff.

Defendant acted throughout in good faith, believing Domenic to be the real owner of the note and mortgage; and the finding is that he made no express warranty or representation as to the ownership of the note and mortgage, or as to the genuineness of the signatures, although his certificate as notary to the acknowledgment of the quitclaim is at least a represen-

tation that Raffaela Pascarella signed it. Plaintiff knew that defendant was acting only as broker or agent in the transaction, and made no independent attempt to ascertain the facts as to the ownership of the securities or the genuineness of the signatures.

Raffaela, who had no knowledge of the transaction, and never consented thereto, subsequently discovered that his note and mortgage had been stolen, and that plaintiff claimed to own them. He brought suit against the plaintiff and obtained judgment for their recovery with costs, which judgment has been satisfied. In addition to returning the securities plaintiff was compelled to pay, on March 5th, 1923, $55.54 costs, and was put to the expense of $125 for counsel fees, and has not been repaid the sums nor any part of the $1,100 purchase price.

On the facts found the court ruled that the defendant, being known to be acting as agent, and having disclosed to the plaintiff the name and address of his principal, did not impliedly warrant the title of the seller to the note and mortgage, nor the genuineness of the signatures to the quitclaim and indorsement; and entered judgment for the defendant.

*Franklin Coeller,* for the appellant (plaintiff).

*Philip Pond,* with whom was *Robert H. Alcorn,* and, on the brief, *William J. McKenna,* for the appellee (defendant).

BEACH, J. In *Chieppo* v. *Chieppo,* 88 Conn. 233, 90 Atl. 940, at page 239, the personal liability of one who contracts as agent for a named principal, without sufficient authority, is stated as follows: "In such cases the agent is not . . . bound by the contract, because nobody intended that he should be so bound; but if, by

reason of his lack of authority, the contract is not enforceable against the alleged principal, the party who has been induced to contract on the faith of the agent's authority has one of two remedies. If the agent honestly believed that he had an authority which he did not possess, he may be sued on an implied warranty of authority. If he knew, or (as in this case) he ought to have known, that he had not the authority which he professed to have, he may be sued in the action of deceit." Citing *Starkey* v. *Bank of England*, L. R. (1903) App. Cas. 114; *Noyes* v. *Loring*, 55 Me. 408; *Jacobs* v. *Williams*, 85 Conn. 215, 82 Atl. 202; Anson on Contracts, pp. 424-429.

In Huffcut on Agency, p. 231, under the subtitle "Agent liable as for breach of warranty of authority," the author says: "Where the agent innocently exceeds his authority under circumstances not amounting to deceit, no action in tort can be maintained. Yet clearly the third party has suffered as great an injury as if the representation had been made fraudulently. In order to provide a remedy in such an emergency, the courts have invented the fiction that the agent 'warrants' his authority whenever he makes a contract for his principal, and allow an action for damages for the breach of this warranty of authority." Citing cases, including *Collen* v. *Wright*, 8 El. & Bl. 647, which is the leading English case on the subject.

It is perhaps unnecessary to call the implied warranty of authority a legal fiction, for one who holds himself out as agent or broker in a given transaction necessarily represents that he is authorized to act in the particular transaction as such agent or broker, and invites the other party to act on that representation. Mechem on Agency (2d Ed., Vol. 1) § 1362, states the legal basis of the agent's liability in such cases more satisfactorily: "It is ordinarily more consistent with

legal principles to hold as between the agent and the other party, that, where the agent has induced action, in reliance upon express or implied representations of authority, the agent and not the other party should assume the risk." This puts the warranty, express or implied, upon the basis of a representation by word or conduct, made for the purpose of influencing the conduct of another, which, being relied on and acted on to the injury of the other, cannot be denied for the purpose of escaping liability for such injury.

Mechem deals with the subject in all its variation with great learning in § 1359 *et seq.* The simplest and commonest cases are those where, as in the case at bar, the agent never had any authority at all from the principal for whom he purports to act. Of course, if the injured party has not relied on the agent's express or implied representation of authority, no implied warranty can be inferred. On the other hand, if the representation is relied on and acted on and injury results, the agent is liable though he acted throughout in good faith. And while many of the decided cases are those in which the agent made a contract purporting to bind his principal, it is apparent from the broad basis of the liability, that the rule is not confined to the making of contracts. Mechem, § 1368, says, on this point: "Thus, for example, the agent by an assumption of authority to demand it, may induce the payment of money, the delivery of goods, . . . the alteration of records, the transfer of stocks, and many other similar acts which will readily suggest themselves." Such was the nature of the transaction here. The defendant, honestly believing and representing that he had authority from the real owner of the securities, induced the plaintiff by that representation, fortified by the forged assignment of mortgage and indorsement of the note, to pay him, as agent, $1,100.

Perhaps the case nearest in point is *Starkey* v. *Bank of England,* L. R. (1903) App. Cas. 114. In that case a broker induced the bank to make a transfer of registered securities upon a forged power of attorney. The securities were registered in the joint names of two brothers, one of whom signed his own name and forged his brother's name to the power of attorney on the faith of which the bank transferred the securities to a purchaser. The broker acted in good faith, and was held liable to the bank, which had been compelled to reimburse the injured joint owner. In delivering judgment Lord Davey said: "As a separate and independent rule of law it [the doctrine of *Collen* v. *Wright,* 8 El. & Bl. 647] is not confined to the bare case where the transaction is . . . one of contract, but it extends to every transaction of business into which a third party is induced to enter by a representation that the party with whom he is doing business has the authority of some other person."

It is quite true that one who, being known to act as agent or broker, offers securities of another for sale, does not warrant the title of such other person to the securities, nor the validity of the securities themselves, for the reason, pointed out in *Chieppo* v. *Chieppo, supra,* that being known to act as agent or broker, he is known not to be a party to the contract. Nobody intended him to be bound by it. All the cases cited by the appellees are of this character.

On the other hand, an agent or broker known to be acting as such, does, by the very fact of offering securities of another for sale, represent that he is authorized by such other person to offer them for sale. It would be impossible for him to do business as agent or broker on any other basis. The representation is made for the very purpose of inducing a third person to buy; and when, being relied on and acted on by the third

person, it turns out to be untrue, with the result that either the buyer or the broker must suffer a loss, it is, as Mechem says, "more consistent with legal principles" that as between the two the broker should suffer.

The appellant's sixth reason of appeal is that the court erred "in overruling the plaintiff's claim of law that an agent who procures a customer for a mortgage and note, claiming that he is the agent for the rightful owner, is liable in damages to a purchaser in good faith of such mortgage and note, when in truth and in fact such agent did not represent such rightful owner."

For the purposes of a general statement of the law it would be more accurate to substitute the words "named principal" for "rightful owner," because, as already stated, the agent does not warrant the title of his principal; but in this case it happens that the named principal was the rightful owner. The sixth reason of appeal is well taken.

We are of opinion that on the facts found the plaintiff is entitled to judgment for the purchase price of $1,100 paid out, and for the costs and counsel fees itemized in the finding, with interest from the dates of the several payments.

There is error, the judgment is set aside and the cause remanded with direction to enter judgment for the plaintiff to recover the $1,100, with interest from December 8th, 1921, and the costs and counsel fees, amounting to $180.54, with interest from March 5th, 1923.

In this opinion the other judges concurred.