**EASTERN RENOVATING CORPORATION et al., Plaintiffs, Appellants,**

v.

**The ROMAN CATHOLIC BISHOP OF SPRINGFIELD et al., Defendants, Appellees.**

**No. 76–1427.**

United States Court of Appeals, First Circuit.

Argued March 3, 1977.
Decided April 29, 1977.

Mark A. White and David B. Cohen, Boston, Mass., for appellant.

William G. Meserve, Boston, Mass., with whom John M. Harrington, Jr., and Ropes & Gray, Boston, Mass., were on brief for appellees.

Before COFFIN, Chief Judge, MOORE * and ALDRICH, Circuit Judges.

ALDRICH, Senior Circuit Judge.

These joint appeals are from various judgments entered in two separate cases, which, together with counterclaims, were tried together to a jury. The Roman Catholic Bishop of Springfield, a corporation sole, hereinafter, the Bishop, is the owner of a number of churches in the western part of Massachusetts. Perhaps because parish priests are chosen for qualities other than their business acumen, but in any event, because of the desirability of central financial control, it has long been a standing rule of the Bishop that no priest assigned charge of a church may enter into contracts imposing an obligation upon the Bishop exceeding $1,000. Although aware of this limitation, in the early 1960's, plaintiff Zaleski, a citizen of Connecticut, then doing business as Eastern Renovating Contractors, came into the diocese and did church repair at the request of a parish priest upon a purported agreement to pay an amount substantially in excess of the limit. When the Bishop learned of this, a dispute arose. The dispute was settled. As part of the settlement Zaleski agreed in writing that he would not,

"directly or indirectly, through agents, servants or employees, or other companies, do any work in the Diocese of Springfield, Massachusetts on diocesan property without first obtaining the written permission of the Bishop on any contract which I may enter into."

Zaleski has never received any release from this undertaking, nor did he receive the Bishop's permission to do further church work. Nonetheless, in November, 1972 he approached Revs. Forhan and Zator, the pastors of churches in Longmeadow and Chicopee respectively, seeking to do various repair work to their church buildings. In both cases agreements were signed, and work done, the contracting party being Eastern Renovating Corp., herein-

after Eastern, a corporation of which Zaleski was the president and sole stockholder. Although in writing, there is considerable dispute about the terms of the agreements, since the priests claim fraudulent alterations by Zaleski. Suffice it to say that despite the $1,000 limitation on the priests' authority, Zaleski obtained from them payment of $4,270 out of a claimed $34,000 in one case, and $50,700 out of a claimed $93,-000 in the other.[1] In the present suit, Eastern sought recovery both against the Bishop and the priests for the balances claimed due, and the Bishop counterclaimed against Eastern for recovery of the $54,970. In addition, the Bishop made claim against Zaleski for the $54,970, and for any further amount which might be awarded Eastern in case, for some reason, Eastern succeeded in the present action.

At the close of the evidence the court directed a verdict for the priests and put the rest of the dispute to the jury, together with three special questions. The jury resolved, all issues in favor of the Bishop, and in answer to the special questions found that Zaleski at all material times knew of the $1,000 limitation on the priests' authority, that the Bishop had not excused Zaleski from the obligations assumed in the 1964 written agreement, and that the Bishop had waived nothing in this case.

Eastern and Zaleski appeal. Their brief is notable for its recitation of "facts" in the form of evidence favorable to them without noting the evidence to the contrary, and for miscited legal authorities. Nor is the extent of the questions sought to be raised altogether clear. The following appear to emerge.

### 1. Choice of law.

The alleged agreements assert that Connecticut law governs. Appellants attempt to claim it even as to the mutual relationship of the defendants. Since we perceive no difference, however, between Massachu-

---

* Of the Second Circuit, sitting by designation.

1. The principal work done by Eastern in each case was a snow guard job, though we may

well wonder whether the word "guard" is superfluous.

setts and Connecticut law, we do not pursue this subject.

### 2. *Personal liability of the priests.*

■ Appellants object on two grounds, which, incidentally, are inconsistent, to the district court's direction of a verdict on the counts against the two priests individually. Both contentions, however, fail for the reason that, on the evidence, particularly Zaleski's 1964 letter, it would have been impossible for the jury to find that Zaleski did not know that the Bishop was the principal, and that the priests lacked authority to bind the Bishop beyond the sum of $1,000. Accordingly, the priests could not be personally liable, either as agents of an undisclosed principal, 1 Mechem on Agency § 1413 (2d ed. 1914); 2 Williston on Contracts § 288 (3d ed. 1959), or on a theory of a breach of an implied representation of authority, since Eastern could not have relied on a representation it knew to be false, *Siller v. Philip*, 1928, 107 Conn. 612, 141 A. 872; *Sullivan v. Mancini*, 1925, 103 Conn. 110, 114, 130 A. 79, 80; 1 Mechem, ante, § 1369.

### 3. *Eastern should have been permitted to recover on quantum meruit.*

■ Eastern makes the extraordinary claim that if, for some reason, it could not recover against the Bishop on the contract, it was nevertheless entitled to recover for the fair value of the work done. This is a bold, and impermissible, attempt to accomplish indirectly what could not be done directly. There can be no implied undertaking to pay for what it was understood was not to be done in the first place. When a party cannot be required to pay for goods or services forced upon him, the fact that the status quo cannot be restored must be the other party's loss. *Wetherell Bros. Co. v. United States Steel Co.*, 1 Cir., 1952, 200 F.2d 761, 764; Restatement of Restitution §§ 2, 41(a)(iii) (1937). The jury was properly instructed with regard to Eastern's claim that the Bishop knew the work was being done and did not object, and the evidence offered to support this which was excluded was properly so.

### 4. *Alleged errors in the conduct of the trial.*

#### a) *Zaleski's past criminal convictions.*

As a result of alleged fraudulent alterations of various documents connected with this case, Zaleski was convicted in the Massachusetts superior court on four counts of forgery, and four counts of uttering a fraudulent instrument. These convictions were introduced at the trial. Beyond the bare criminal conviction, which is the normal permissible extent so far as impeachment is concerned, *United States v. Plante*, 1 Cir., 1973, 472 F.2d 829, *cert. denied*, 411 U.S. 950, 93 S.Ct. 1932, 36 L.Ed.2d 411; *Tucker v. United States*, 5 Cir., 1969, 409 F.2d 1291, 1294 n.1, the Bishop was allowed to show that the convictions involved the particular instruments with which the instant jury was concerned.

■ We find no error. The rationale for restricting examination into a defendant's prior convictions is the desire to avoid litigation of collateral issues, *see United States v. Plante*, ante, and the danger that inquiry into the specifics of the prior offense will heighten the prejudice to the defendant by the inference that one who has committed a crime in the past is likely to act wrongfully again, *see United States v. Mitchell*, 3 Cir., 1970, 427 F.2d 644; McCormick on Evidence § 190 (2d ed. 1972). Here the genuineness of the documents for which Zaleski had been convicted of forgery was a relevant issue, so the inquiry did not raise collateral matters. Nor was there a risk of an improper inference from a conviction for a different prior offense, since the conviction involved the same transaction at issue in the civil case. It is true that under such circumstance the jury might be expected to use the evidence substantively, rather than simply for impeachment. However, that would not be improper under F.R.Evid. 803(22). *See also Cardillo v. Zyla*, 1 Cir., 1973, 486 F.2d 473 (estoppel by former judgment of conviction).

#### b) *Admission of the Synodal Statutes.*

■ Appellants contend, on the basis of the best evidence rule, that the district

court improperly admitted a copy of the Synodal Statutes of the Springfield diocese setting forth the $1,000 limitation. In the court below appellants did not set forth the grounds of their objection, not even mentioning the best evidence rule, and therefore we would not consider their contention, F.R.Evid. 103(a)(1), even if we thought it meritorious, which we do not, F.R.Evid. 1001(3), (4), 1003.

### c) *Denial of motion for additional voir dire.*

 At the beginning of the trial, some two weeks after the jury empanelling, a proceeding which appellants' counsel did not attend and for which absence we have been given no explanation, appellants moved to be allowed to propound additional voir dire questions to the jury. The motion was denied. The extent of voir dire is a matter largely for the district court's sound discretion, *United States v. Desmarais*, 1 Cir., 1976, 531 F.2d 632, and nothing about appellants' showing and procedure—filing a tardy motion which set forth no grounds or proposed questions, and declining, on appeal, to provide us with a transcript of the voir dire examination which was held—suggests any reversible error.

This case had no merit to start with, and the appeal was even more uncalled for. Neither appellees, nor the court should be so imposed upon. Pursuant to 28 U.S.C. § 1927, we tax appellants with the sum of $2500. additional costs on account of appellees' counsel fees, without suggesting that, as between counsel and client, a larger amount may not be appropriate.

*Affirmed.*